United States District Court
Eastern District of Michigan
Southern Division

United States of America,

      Plaintiff,

                              Hon. Laurie J. Michaelson

v.

                              Case No. 20-CR-20355

Darrell Baker,

      Defendant.

_____/

## Plea Agreement

The United States of America and the defendant, Darrell Baker, have reached a plea agreement under Federal Rule of Criminal Procedure 11. The plea agreement's terms are:

### 1.    Counts of Conviction

The defendant will waive his right to an indictment and will plead guilty to Counts 1 and 2 of the Information. Count 1 charges the defendant with Bank Fraud under 18 U.S.C. § 1344(1). Count 2 charges the defendant with Money Laundering under 18 U.S.C. § 1957.

2.    **Statutory Minimum and Maximum Penalties**

The defendant understands that the counts to which he is pleading guilty carry the following minimum and maximum statutory penalties:

| Count 1 | Term of imprisonment: | 30 years |
|---|---|---|
| | Fine: | $1,000,000 |
| | Term of supervised release | 5 years |
| Count 2 | Term of imprisonment: | 10 years |
| | Fine: | $250,000 |
| | Term of supervised release: | 3 years |

The defendant further understands that the Court has the discretion to run the sentences of imprisonment on the counts of conviction consecutively to each other.

3.    **Agreement Not to Bring Additional Charges**

If the Court accepts this agreement and imposes sentence consistent with its terms, the United States Attorney's Office for the Eastern District of Michigan will not bring additional charges against

the defendant for the conduct reflected in the factual basis of this agreement.

**4.      Elements of Count[s] of Conviction**

The elements of Count 1 are:

(A) First: That the defendant knowingly executed a scheme or artifice to defraud a financial institution;

(B) Second, that the defendant did so did so with the intent to defraud the financial institution; and

(C) That the financial institution was then insured by the Federal Deposit Insurance Corporation.

The elements of Count 2 are:

(A) First, that the defendant knowingly engaged in a monetary transaction.

(B) Second, that the monetary transaction was in property derived from specified unlawful activity.

(C) Third, that the property had a value greater than $10,000.

(D) Fourth, that the defendant knew that the transaction was in criminally derived property.

(E) Fifth, that the monetary transaction took place within the United States.

## 5.    Factual Basis

The parties agree that the following facts are true, accurately describe the defendant's role in the offenses, and provide a sufficient factual basis for the defendant's guilty plea:

The "Paycheck Protection Program" (PPP) is a program administered by the U.S. Small Business Association (SBA) that helps businesses keep their workforces employed during the coronavirus crisis. Enacted on March 27, 2020 as a part of the CARES Act, the program is designed to provide a direct incentive for small businesses to keep their workers on the payroll during the pandemic. The PPP enables businesses to obtain forgivable loans from participating financial institutions. The SBA will forgive the loans if all employees are kept on the payroll for eight weeks and the money is used for payroll, rent, mortgage interest, or utilities.

In May, 2020, Defendant Darrell Baker, a resident of Detroit, Michigan applied for and obtained a PPP loan on behalf a business he purported to own, Motor City Solar Energy, Inc (Motor City). Baker obtained this PPP loan from Customers Bank, a Pennsylvania-based financial institution that serves as a

participating lender in the program. Customers Bank is insured by the Federal

Deposit Insurance Corporation.

In his application for the PPP loan, Baker represented that Motor City had

68 employees and, that his 2019 payroll expenses totaled some $2.8 million.

Baker submitted documentation as part of his application package, including

supposed tax filings, that purported to support these claims. Customers Bank

provided Motor City with a $590,000 PPP loan, wired from Pennsylvania to an

account Baker controlled at Michigan First Credit Union in Southfield, Michigan.

In fact, Baker's representations in his application for the PPP loan were

false, as was the supporting documentation. Motor City had no employees, no

payroll expenses of any kind, and was not an operational business. Baker

submitted these false statements in his application as part of a scheme to defraud

Customers Bank and the PPP, and did so with the intent to defraud.

Baker managed to withdraw approximately $172,000 of the $590,000 he

obtained before Michigan First Credit Union froze the remaining funds, which

were ultimately returned to Customers Bank. Baker spent these monies on, among

other things, four expensive (though used) automobiles, specifically two Cadillac

Escalades, a Dodge Charger, and a Hummer. Baker purchased these vehicles from

a dealership in Redford, Michigan. He paid for these four automobiles with

cashier's checks he obtained from Michigan First Credit Union, and each of the

four checks were in amounts that exceeded $10,000. The proceeds of these financial transactions were in fact derived from specified unlawful activity (specifically bank fraud), and Baker knew that these proceeds were the fruits of his own criminal conduct.

**6.    Advice of Rights**

The defendant has read the Information, has discussed the charges and possible defenses with his attorney, and understands the crimes charged. The defendant understands that, by pleading guilty, he is waiving many important rights, including the following:

A.    The right to plead not guilty and to persist in that plea;

B.    The right to a speedy and public trial by jury;

C.    The right to the assistance of an attorney at every critical stage of the proceedings, including trial;

D.    The right to an appointed attorney, if the defendant cannot afford to retain one;

E.    The right to be presumed innocent and to require the government to prove the defendant guilty beyond a reasonable doubt at trial;

F.      The right to confront and cross-examine adverse witnesses at trial;

G.      The right to testify or not to testify at trial, whichever the defendant chooses;

H.      If the defendant chooses not to testify, the right to have the jury informed that it may not treat that choice as evidence of guilt;

I.      The right to present evidence or not to present evidence at trial, whichever the defendant chooses; and

J.      The right to compel the attendance of witnesses at trial.

**7.      Collateral Consequences of Conviction**

The defendant understands that his convictions here may carry additional consequences under federal or state law. The defendant understands that, if he is not a United States citizen, his convictions here may require him to be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant further understands that the additional consequences of his convictions here may include, but are not limited to, adverse effects on the defendant's immigration status, naturalized citizenship, right to vote, right to carry a firearm, right to serve on a jury, and ability to hold

certain licenses or to be employed in certain fields. The defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty what the additional consequences of the defendant's conviction[s] might be. The defendant nevertheless affirms that the defendant chooses to plead guilty regardless of any immigration or other consequences from his[her] conviction[s].

## 8. Defendant's Guideline Range

### A. Court's Determination

The Court will determine the defendant's guideline range at sentencing.

### B. Acceptance of Responsibility

The government recommends under Federal Rule of Criminal Procedure 11(c)(1)(B) that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a). Further, if the defendant's offense level is 16 or greater and the defendant is awarded the two-level reduction under USSG § 3E1.1(a), the government recommends that the defendant receive an additional one-level reduction for acceptance of responsibility under USSG § 3E1.1(b). If, however, the government learns that the defendant has engaged in any

conduct inconsistent with acceptance of responsibility—including, but not limited to, making any false statement to, or withholding information from, his probation officer; obstructing justice in any way; denying his guilt on the offense(s) to which he is pleading guilty; committing additional crimes after pleading guilty; or otherwise demonstrating a lack of acceptance of responsibility as defined in USSG § 3E1.1—the government will be released from its obligations under this paragraph, will be free to argue that the defendant not receive *any* reduction for acceptance of responsibility under USSG § 3E1.1, and will be free to argue that the defendant receive an enhancement for obstruction of justice under USSG § 3C1.1.

### C.    Other Guideline Recommendations

The parties agree that, based on defendant's plea of guilty to Count 2 of the Information (Money Laundering), 1 point should be added to the defendant's Base Offense Level for his Bank Fraud Offense. USSG Section 2S1.1(a)(1), (b)(2)(A).

The parties have no other recommendations as to the defendant's guideline calculation.

### D.    Factual Stipulations for Sentencing Purposes

The parties have no additional factual stipulations for sentencing

purposes.

### E.    Parties' Obligations

Both the defendant and the government agree not to take any

position or make any statement that is inconsistent with any of the

guideline recommendations or factual stipulations in paragraphs 8.B,

8.C, or 8.D. Other than the guideline recommendations and factual

stipulations in those paragraphs, however, neither party is restricted in

what it may argue or present to the Court as to the defendant's

guideline calculation.

### F.    Not a Basis to Withdraw

The defendant understands that he will have no right to withdraw

from this agreement or withdraw his[her] guilty plea if he disagrees, in

any way, with the guideline range determined by the Court, even if that

guideline range does not incorporate the parties' recommendations or

factual stipulations in paragraphs 8.B, 8.C, or 8.D. The government

likewise has no right to withdraw from this agreement if it disagrees

with the guideline range determined by the Court.

9.    **Imposition of Sentence**

   A.    **Court's Obligation**

The defendant understands that in determining his sentence, the

Court must calculate the applicable guideline range at sentencing and

must consider that range, any possible departures under the sentencing

guidelines, and the sentencing factors listed in 18 U.S.C. § 3553(a), and

apply any applicable mandatory minimums.

   B.    **Imprisonment**

      1.    **Recommendation**

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the

government recommends that the defendant's sentence of imprisonment

not exceed the midpoint of the defendant's guideline range as

determined by the Court.

      2.    **No Right to Withdraw**

The government's recommendation in paragraph 14.B.1 is not

binding on the Court. The defendant understands that he will have no

right to withdraw from this agreement or withdraw his guilty plea if the

Court decides not to follow the government's recommendation. The

government likewise has no right to withdraw from this agreement if

the Court decides not to follow the government's recommendation. If however, the Court rejects or purports to reject any other term or terms of this plea agreement, the government will be permitted to withdraw from the agreement.

### C.    Supervised Release

#### 1.    Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the parties recommend that the Court impose a three-year term of supervised release.

#### 2.    No Right to Withdraw

The parties' recommendation is not binding on the Court. The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the parties' recommendation. The defendant also understands that the government's recommendation concerning the length of the defendant's sentence of imprisonment, as described above in paragraph 14.B.1, will not apply to or limit any term of imprisonment that results from any later revocation of the defendant's supervised release.

**D.   Fines**

There is no recommendation or agreement as to a fine.

**E.   Restitution**

The Court must order restitution to every identifiable victim of the defendant's offense. There is no recommendation or agreement on restitution. The Court will determine at sentencing who the victims are and the amounts of restitution they are owed.

The defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. 18 U.S.C. §§ 3612(c) and 3613. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

The defendant agrees to make a full presentence disclosure of his financial status to the United States Attorney's Office by completing a Financial Disclosure Form and the accompanying releases for the purpose of determining his ability to pay restitution. The defendant

agrees to complete and return the Financial Disclosure Form within three weeks of receiving it from government counsel. The defendant agrees to participate in a presentencing debtor's examination if requested to do so by government counsel.

### F.    Forfeiture

Pursuant to 18 U.S.C. § 982(a)(1) and (2), and 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c), Defendant agrees to forfeit to the United States his interest in (a) any property constituting, or derived from, proceeds defendant obtained directly or indirectly, as the result of his violation of 18 U.S.C. § 1344, (b)  all property, real and personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to Defendant's conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1344, and (c) any property, real or personal, involved in defendant's violation of 18 U.S.C. § 1957, or any property traceable to such property.

Specifically, Defendant agrees to forfeit to the United States, his interest in the following:

a.    2015 Cadillac Escalade, VIN 1GYS4NKJ7FR587893

b.    2018 Dodge Charger, VIN 2C3CDXGJ4JH220865

c.     2012 Cadillac Escalade, VIN 1GYS4KEF3CR128099

d.     2007 Hummer H2 VIN, 5GRGN23UX7H103219

("Subject Vehicles")

In addition, Defendant agrees to the entry of a forfeiture money judgment against him in favor of the United States in the amount of $172,484.40, representing the total value of the property subject to forfeiture for Defendant's violations to which he is pleading guilty, to the extent such value is not satisfied by the specific forfeitures set forth above.

Defendant agrees that the forfeiture money judgment may be satisfied, to whatever extent possible, from any property owned or under the control of Defendant.  To satisfy the money judgment, Defendant explicitly agrees to the forfeiture of any assets as he has now, or may later acquire, as substitute assets under 21 U.S.C. § 853(p)(2) and waives and relinquishes his rights to oppose the forfeiture of substitute assets under 21 U.S.C. § 853(p)(1) or otherwise.

Defendant agrees to the entry of one or more orders of forfeiture incorporating forfeiture of the assets enumerated in this section, including the Court's prompt entry of a Preliminary Order of Forfeiture,

following Defendant's guilty plea, upon application by the United States, at, or any time before, his sentencing in this case, as mandated by Fed. R. Crim. P. 32.2. Defendant agrees to sign such an order, indicating he consents to its entry if requested to do so by the Government.

Defendant agrees that he will cooperate with the United States by taking whatever steps are necessary to deliver clear title to property subject to forfeiture under this agreement to the United States and will execute such legal documents as may be required to transfer rights, title, and ownership to the United States and by taking whatever steps are necessary to ensure that the property is not sold, disbursed, hidden, wasted, or otherwise made unavailable for forfeiture.

Defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise him of this, pursuant to Fed. R. Crim. P. 11(b)(1)(J), or otherwise, at the time of his guilty plea is accepted.

In entering into this agreement with respect to forfeiture, Defendant knowingly, voluntarily, and intelligently waives any Double

Jeopardy challenge, or any other challenge to the above-described forfeiture based on the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

Defendant also agrees that Defendant shall assist the United States in all proceedings, whether administrative or judicial, involving the forfeiture, disgorgement, transfer, or surrender of all rights, title, and interest, regardless of their nature of form, in the property that Defendant has agreed to forfeit, disgorge, transfer, or surrender, and any other assets, including real and personal property, cash, and other monetary instruments, wherever located, which Defendant or others to his knowledge have accumulated as a result of illegal activities.

Such assistance will include agreement by Defendant's heirs, successors, and assigns, to forfeiture, disgorgement, transfer, or surrender, to any interest in the above-described forfeiture.  Such assistance will further involve an agreement by Defendant to the entry of an order enjoining the transfer or encumbrance of assets that may be identified as being subject to forfeiture, disgorgement, transfer, or surrender.

Defendant also agrees to identify all assets over which he exercises control, directly or indirectly, or has exercised such control, within the past five years.  He will identify all assets in which he has or had during that time any financial interest will provide all necessary and appropriate documentation with respect to said assets, including consents to forfeiture, quit claim deeds, and any and all other documents necessary to deliver good and marketable title to said property. Defendant agrees to take all steps as requested by the government to obtain from any other parties by any lawful means any records of assets owner at any time by Defendant.  He also agrees to undergo any polygraph examination the government may choose to administer concerning such assets and to provide and/or consent to the release of his tax returns for the previous five years.

Non-Abatement of Criminal Forfeiture: Defendant agrees the forfeiture provisions of this Plea Agreement are intended to, and will, survive him, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement.  The forfeitability of any particular property pursuant to this agreement shall be determined as if Defendant had survived, and that determination shall be binding

upon Defendant's heirs, successors, and assigns, until the agreed

forfeiture, including any agreed money judgment amount, is collected in

full.

### G.    Special Assessment

The defendant understands that he will be required to pay a

special assessment of $200, due immediately upon sentencing.

## 10.    Appeal Waiver

The defendant waives any right he may have to appeal his

conviction on any grounds. If the defendant's sentence of imprisonment

does not exceed the top of the guidelines range as determined by the

court, the defendant also waives any right he may have to appeal his

sentence on any grounds.

## 11.    Collateral Review Waiver

The defendant retains the right to raise claims alleging ineffective

assistance of counsel, as long as the defendant properly raises those

claims by collateral review under 28 U.S.C. § 2255. The defendant also

retains the right to pursue any relief permitted under 18 U.S.C.

§ 3582(c), as long as the defendant properly files a motion under that

section. The defendant, however, waives any other right he may have to

challenge his conviction or sentence by collateral review, including, but

not limited to, any right he[she] may have to challenge his conviction or

sentence on any grounds under 28 U.S.C. § 2255, 28 U.S.C. § 2241, or

Federal Rule of Civil Procedure 59 or 60.

## 12.   Consequences of Withdrawal of Guilty Plea or Vacation of Judgment

If the defendant is allowed to withdraw his guilty pleas, or if the

defendant's conviction or sentence under this agreement is vacated, the

government may reinstate any charges against the defendant that were

dismissed as part of this agreement and may file additional charges

against the defendant relating, directly or indirectly, to any of the

conduct underlying the defendant's guilty plea or any relevant conduct.

If the government reinstates any charges or files any additional charges

as permitted by this paragraph, the defendant waives his right to

challenge those charges on the ground that they were not filed in a

timely manner, including any claim that they were filed after the

limitations period expired.

## 13.   Use of Withdrawn Guilty Plea

The defendant agrees that if he is permitted to withdraw his

guilty plea for any reason, he waives all of his rights under Federal

Rule of Evidence 410, and the government may use his guilty plea, any statement that the defendant made at his guilty plea hearing, and the factual basis set forth in this agreement, against the defendant in any proceeding.

## 14.    Parties to Plea Agreement

This agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

## 15.    Scope of Plea Agreement

This plea agreement is the complete agreement between the parties and supersedes any other promises, representations, understandings, or agreements between the parties concerning the subject matter of this agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to the defendant or to the attorney for the defendant at any time before the defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this plea agreement. This plea agreement also does not prevent any civil or administrative actions against the defendant, or any forfeiture claim against any property, by the United States or any other party.

16.   **Acceptance of Agreement by Defendant**

This plea offer expires unless it has been received, fully signed, in the United States Attorney's Office by 5:00 PM on August 14, 2020. The government may withdraw from this agreement at any time before the defendant pleads guilty.

Matthew Schneider
United States Attorney

_(signed) s/ John K. Neal_

John K. Neal
Assistant United States Attorney
Chief, White Collar Crime Unit

Dated: 7/31/2020

By signing below, the defendant and his attorney agree that the defendant has read or been read this entire document, has discussed it with his attorney, and has had a full and complete opportunity to confer with his attorney. The defendant further agrees that he understands this entire document, agrees to its terms, has had all of his questions

answered by his attorney, and is satisfied with his attorney's advice and

representation.

Benton Martin
Attorney for Defendant

Dated: 9/10/2020

Darrell Baker
Defendant