UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,

- vs -

DARRELL BAKER,

           Defendant.
_____/

CRIMINAL NO. 20-20355

Hon. Laurie J. Michaelson

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

In the early days of the COVID-19 crisis, Darrell Baker applied for and obtained a $590,000 loan from a bank participating in the "Paycheck Protection Program" (PPP). The PPP is a program administered by the Small Business Administration and designed to help employers keep workers on the payroll during the economic downturn brought about by the pandemic. To obtain this PPP loan, Baker represented to the bank that he owned a business called Motor City Solar Energy (Motor City), which purported to have 68 employees and an annual payroll of $2.8 million. In fact, Motor City was fictitious, and had no payroll, customers, or ongoing business of any kind. Baker spent approximately $172,000 of the $590,000 he obtained through his fraud on expensive vehicles and other personal interests. Fortunately, Baker's own financial institution grew wary of such

expenditures and froze the balance of the stolen funds before Baker dissipated them.

Baker's criminal conduct was both brazen and serious. The PPP program has served as a critical source of support for struggling businesses during an unprecedented global crisis. Fraud of this sort imposes real costs on lenders and the government and undermines public confidence in the integrity of the program. The United States recommends the court impose a sentence of 33 months imprisonment, at the midpoint of the advisory guideline range calculated by the probation department, for this offender.

FACTUAL AND PROCEDURAL BACKGROUND

The PPP is a program administered by the U.S. Small Business Association (SBA) that helps businesses keep their workforces employed during the coronavirus crisis. Enacted on March 27, 2020 as a part of the CARES Act, the program is designed to provide a direct incentive for small businesses to keep their workers on the payroll during the pandemic. The PPP enables businesses to obtain forgivable loans from participating financial institutions. The SBA will forgive the loans if all employees are kept on the payroll for a certain period of time and the proceeds of the loans are used for payroll, rent, mortgage interest, or utilities.

In May 2020, Defendant Darrell Baker, a resident of Detroit, Michigan, applied for and obtained a PPP loan on behalf of Motor City Solar Energy, a

business he purported to own and manage. Baker obtained this PPP loan from Customers Bank, a Pennsylvania-based financial institution that serves as a participating lender in the program. Customers Bank is insured by the Federal Deposit Insurance Corporation.

In his application for the PPP loan, Baker represented that Motor City had 68 employees and, that his 2019 payroll expenses totaled some $2.8 million. Baker submitted documentation as part of his application package, including supposed tax filings, that purported to support these claims. Baker also certified that the funds obtained through the PPP loan would be used for qualified expenses. Customers Bank provided Motor City with a $590,000 PPP loan, wired from Pennsylvania to an account Baker controlled at Michigan First Credit Union in Southfield, Michigan.

In fact, Baker's representations in his application for the PPP loan were false and fraudulent, as was the supporting documentation. Motor City had no employees, no payroll expenses of any kind, and was not an operational business. Baker submitted these false statements in his application as part of a scheme to defraud Customers Bank and the PPP, and did so with the intent to defraud.

Baker managed to withdraw approximately $172,000 of the $590,000 he obtained before Michigan First Credit Union, Baker's own financial institution,

grew suspicious and froze the remaining funds. Michigan Frist Credit Union's suspicions were well-founded. Baker spent his PPP monies on, among other things, four expensive (though used) automobiles, specifically two Cadillac Escalades, a Dodge Charger, and a Hummer. Baker purchased these vehicles from a dealership in Redford, Michigan. He paid for these four automobiles with cashier's checks he obtained from Michigan First Credit Union, and each of the four checks were in amounts that exceeded $10,000. The proceeds of these financial transactions were in fact derived from specified unlawful activity (specifically bank fraud), and Baker knew that these proceeds were the fruits of his own criminal conduct. After ascertaining the fraudulent nature of Baker's receipt of the PPP funds, Michigan First Credit Union ultimately returned the unspent portion of the funds to Customer's Bank.

Baker was charged via criminal complaint on June 1, 2020. His complaint was superseded by an information on August 17, 2020, charging Baker with Bank Fraud and Money Laundering. Baker entered pleas to both offenses on September 11, 2020, pursuant to a Rule 11 Plea Agreement.

## GUIDELINE CALCULATION

Per the plea agreement in this case, the parties agree that defendant Baker should receive a three-point reduction for Acceptance of Responsibility pursuant to

Section 3E1.1 of the United States Sentencing Guidelines (USSG). The parties also agree that, based on defendant's plea of guilty to Count 2 of the Information (Money Laundering), one point should be added to the defendant's Base Offense Level for his Bank Fraud Offense. *See* USSG Section 2S1.1(a)(1), (b)(2)(A). The only area of dispute involves the appropriate Offense Level for that Bank Fraud Offense. The government submits that the loss in this case is properly calculated at $590,000, the full value of the funds the defendant obtained from the lender through his criminal conduct in this case. That would yield an Offense Level of 21 for the Bank Fraud Offense, composed of 14 points (based on a loss greater than $550,000) plus a Base Offense Level of 7.

The Application Notes to the USSG state plainly that, in calculating loss pursuant to Section 2B1.1, courts should use "the greater of actual loss and intended loss." *See* USSG 2B1.1 App. Note 3(A) ("loss is the greater of actual loss and intended loss."). Intended loss is defined as "the pecuniary harm the defendant purposely sought to inflict." *Id.* at App Note 3(A)(ii).

In this case, Baker applied for, and received, a PPP loan of $590,000, based on fraudulent representations and false documentation that Baker submitted to the lender. We therefore know with certainty the "pecuniary harm the defendant purposely sought to inflict." Baker withdrew some $172,484.40 of these funds,

spending many of these dollars on expensive vehicles, before Baker's own financial institution froze his account. It was at this point that the fraud was discovered, and Baker's financial institution returned the balance of the funds to the lender. The fact that Baker was unsuccessful in converting <u>all</u> of the money that he stole into expensive vehicles and other luxury goods does not inure to his benefit in the computation of the Guidelines. *See generally United States v. Fleming*, 128 F.3d 285, 287-88 (6th Cir. 1997); *United States v. Dobish*, 102 F.3d 760, 762 (6th Cir. 1996).

Indeed, in this case, the government submits that there is actually no variance between the intended loss and the actual loss, as those terms are defined in the Sentencing Guidelines. Actual Loss is defined in the Application Notes as "the reasonably foreseeable pecuniary harm that resulted from the offense." USSG 2B1.1 App. Note 3(A)(i). In this case, the "pecuniary harm that resulted from the offense" was Customers Bank's loss of $590,000 due to Baker's false representations and fraudulent documentation. This is not a situation where a defendant, for example, sought a loan for $500,000 based on a fraudulent loan application, and the bank only approved the loan for $100,000. There, a delta exists between the intended loss (presumably, the full value of the loan applied for) and the actual loss, namely, the amount of money the lender parted with as a result of

the defendant's fraud. Here, the defendant sought $590,000 and obtained $590,000 from his victim. The defendant actually inflicted all of the pecuniary harm that he sought to inflict.

It is true that (through no credit to Baker) much of the money that Baker stole was subsequently returned to the victim by Baker's own financial institution. The subsequent recovery of funds obtained through a fraud scheme is relevant to restitution, but not to the computation of actual loss. The Application Notes to the USSG provide for various categories of credits against loss. Such credits include funds returned by the defendant to the victim before the scheme was discovered, and the value of any collateral pledged as part of a fraudulent secured loan. *See* USSG 2B1.1 App. Note 3(E)(i-ii). There is no "credit against loss" for the victims' subsequent recovery of purloined funds because the defendant's own financial institution froze his account based on his pattern of dubious withdrawals.

In sum, whether "actual loss" or "intended loss" is used to calculate the Offense Level in this case, the United States submits that the ultimate figure is the same – namely, the $590,000 that Baker fraudulently obtained from Customers Bank. This level of loss yields an Offense Level of 21 for the Bank Fraud offense.

When this Offense Level is coupled with Baker's Money Laundering conviction (+1) and the reduction for Acceptance of Responsibility (-3), the

7

defendant's Total Offense Level is 19. With his Criminal History Category of I, his properly calculated guideline range is 30-37 months imprisonment.

## SENTENCING FACTORS – 18 U.S.C. § 3553(a)

Section 3553(a) of the United States Code sets forth a number of factors for the Court to consider in imposing sentence. Those factors include the nature and circumstances of the offense, the history and characteristics of the offender, considerations of both specific and general deterrence, and the need to provide just punishment for the offense and promote respect for the rule of law. The government respectfully submits the following observations on those factors and their applicability to the conduct and defendant in the instant case.

The nature and circumstances of the offenses here are quite serious. The defendant's fraud was blatant, egregious, and involved a substantial amount of money. Moreover, Baker's crimes were calculated ones, and were hardly the product of a momentary lapse in judgment. Baker obtained an application for a PPP loan despite knowing that he owned no eligible business. He proceeded to fill out an application for a forgivable loan in the amount of $590,000, representing that he owned a business that employed 68 employees and had a payroll of approximately $2.9 million. There is no ambiguity concerning these representations – they were flagrant lies. Upon receiving the money, Baker

8

immediately engaged in a series of financial transactions that involved the purchase of expensive vehicles. Such transactions and such conduct reflect Baker's calculated willingness to lie for money, his greed, and his complete lack of concern about defrauding a program designed to help struggling small businesses during a national crisis. Baker's crimes were significant ones.

The history and characteristics of the offender present a mixed picture in this case. The PSR reflects the defendant's challenging childhood, and how Baker has managed to forge a fairly stable family life despite the difficult circumstances of his upbringing. His criminal history is relatively minor, which is to his credit, though this is his second conviction for a fraud-related offense. His employment history is spotty and he has substantial unfulfilled child support obligations.

With respect to deterrence, the government submits that there is some need for both specific deterrence and general deterrence with respect to this offense and this offender. As noted above, the instant case is Baker's second conviction for a fraud offense, and the probationary sentence he received on his first offense failed to deter his misconduct in this case. A sentence involving a reasonable period of incarceration would (one hopes) dissuade Baker from engaging in any such fraud in the future. In addition, general deterrence is likewise a relevant consideration in imposing a sentence in this matter. Fraud in the Paycheck Protection Program is a

serious problem in both this district and nationally. The Small Business Administration Office of Inspector General recently conducted an analysis that identified some $4.6 billion in potentially fraudulent PPP loans. Mr. Baker will be the first defendant sentenced for a PPP fraud case in this district, and a sentence in line with the government's recommendation would send the laudable message that this sort of fraud is taken seriously by the courts and will yield significant penal consequences.

Finally, the government submits that a sentence of 33 months would provide just punishment for the offense and promote respect of the rule of law. The PPP has been a critical lifeline for a number of small businesses during an unprecedented national crisis. Fraud on this program obviously harms lenders and may affect their willingness to participate in the program; additionally, it undermines public confidence in the viability of such programs and the ability of public programs to assist those in need. A defendant willing to take advantage of a program designed and intended to help keep our economy afloat during a pandemic is richly deserving of a serious punishment. A sentence of 33 months of incarceration would provide the defendant with an appropriately significant penalty, and would promote respect for the law in this jurisdiction and nationally.

In conclusion, the government respectfully maintains that a sentence of 33 months would appropriately balance the relevant statutory factors at issue in this sentencing. Such a sentence would also adequately account for the seriousness of the offense, promote respect for the law, and deter both Baker and others from engaging in similar criminal conduct. The government therefore recommends a sentence be imposed at this level.

Respectfully Submitted,
SAIMA S. MOHSIN
ACTING UNITED STATES ATTORNEY

/s/ John K. Neal
JOHN K. NEAL
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9644

CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2021, I caused a copy of the foregoing to be served on all counsel of record using the Court's ECF filing system.

/s/ John K. Neal