UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,   CRIMINAL NO. 20-20355

        Plaintiff,

                                  Hon. Laurie J. Michaelson

- vs -

DARRELL BAKER,

        Defendant.
_____/

## GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM

The United States respectfully submits this supplemental brief to address a point that Baker did not raise in his objections to the PSR, but now raises for the first time in his sentencing memorandum. He asserts that the Court should not consider any intended loss under USSG § 2B1.1(b)(1), arguing that the commentary provision instructing courts to consider intended loss is invalid after *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc). Baker is incorrect. As the Sixth Circuit explicitly held in *United States v. Murphy*, 815 F. App'x 918, 924 (6th Cir. 2020), the commentary provision is a reasonable interpretation of the ambiguous term "loss," rather than an improper addition to it.

The sentencing guidelines generally consist of two parts: (1) the guidelines

1

themselves, which are subject to congressional review, and (2) commentary provisions, which do not go through congressional review, and instead serve to "interpret the Guidelines' text, not to replace or modify it." *Havis*, 927 F.3d at 386. Because of this difference, commentary binds courts "if the guideline which the commentary interprets will bear the construction." *Id.* Applying that principle, the Sixth Circuit explained in *Havis* that, where a guideline clearly defines a term and the commentary adds to that definition or modifies it, the commentary provision does not bind courts. There, the guideline at issue was USSG § 4B1.2(b), which explicitly defines a "controlled substance offense" as a state or federal felony prohibiting manufacturing, distributing, or possessing with the intent to distribute controlled substances. *Id.* at 384. Commentary note 1 to that guideline, however: adds to that clear definition, including attempt, conspiracy, and aiding and abetting offenses as a "controlled substance offense." *Id.* The commentary "did not interpret a term in the guideline itself . . . Rather, the Commission used [the commentary] to *add* an offense not listed in the guideline" and thus "deserves no deference." *Id.* at 386–87 (emphasis in original).

USSG § 2B1.1(b)(1) stands in stark contrast to § 4B1.2. It simply instructs the court to adjust the offense level based on the amount of "loss." USSG § 2B1.1(b)(1). Unlike 4B1.2, the guideline does not define "loss" anywhere in its

2

text. *Id.* And the term is itself elastic and ambiguous. As the Sixth Circuit recently explained "loss can mean different things in different contexts." *United States v. Riccardi*, 989 F.3d 476, 486 (6th Cir. 2021). Examining dictionary definitions, the *Riccardi* court described numerous different definitions of loss, ranging from the "amount of something lost" or the "harm or suffering caused by losing or being lost" to broader definitions about deprivation, disadvantages, or emotional harms. A review of the online source "dictionary.com" yields six definitions of the term. And it is not surprising that § 2B1.1 would use a broad, flexible term like "loss" in quantifying harm—it is an expansive guideline that applies to an enormous array of statues, including larceny, embezzlement, theft, stolen property, property damage, fraud, forgery, counterfeiting, and numerous other offenses.

Unsurprisingly, then, when confronted with the very issue that Baker raises here, the Sixth Circuit held that the commentary's inclusion of intended loss is a reasonable interpretation of the term "loss" in § 2B1.1. *United States v. Murphy*, 815 F. App'x 918, 924 (6th Cir. 2020). The court explained that *Havis* involved guideline commentary that "add[ed] 'attempt' crimes to the definition of 'controlled substance offense'" and thus was "not an interpretation" and "deserve[d] no deference." *Id.* In contrast, "loss is left undefined" in § 2B1.1, and "[t]he commentary defining loss is consistent with the construction of the

3

Guidelines as an interpretation of, rather than an addition to, § 2B1.1(b)." *Id.* (internal quotation marks omitted). At least one other court in this Circuit has taken the same view post-*Havis*, even before *Murphy* was decided. *United States v. Talavera*, No. 1:19CR404, 2020 WL 2335969, *3 (N.D. Ohio May 11, 2020) (because loss is not defined under § 2B1.1, the commentary "provide[s] interpretation, as is necessary"). And other circuits have routinely held that the intended loss commentary provision is entitled to deference. *See, e.g.*, *United States v. Crowe*, 735 F.3d 1229, 1237 (10th Cir. 2013) ("Application Note 3 to § 2B1.1 fleshes out how the district court is to calculate 'loss.'"); *United States v. Nagle*, 803 F.3d 167, 179 (3d Cir. 2015); United States v. Dowl, 619 F.3d 494, 502 (5th Cir. 2010).

*Riccardi* does not counsel otherwise. There, a panel of the Sixth Circuit held that Application Note 3(F)(i) in the commentary to § 2B1.1—which assigns a minimum loss amount of $500 for each unauthorized access device the defendant possessed—was not a reasonable interpretation of the term "loss" in 2B1.1. 989 F.3d at 486 ("No reasonable person would define the "loss" from a stolen gift card as an automatic $500."). But its analysis was cabined to that particular application note, and indeed, it painstakingly outlined the many possible definitions of the term "loss," emphasizing its ambiguity. *Id.* Here, where the interpretation of an

4

ambiguous term is a reasonable one, there is no problem under *Havis*.

Finally, as noted in the government's sentencing memorandum, the Court need not even reach this issue. Regardless of the how "loss" is construed or defined here, Baker's criminal conduct that led to him obtaining $590,000 from Customer's Bank falls within <u>any</u> interpretation of the term. Baker's assertion that the victim's recovery of funds following discovery of the fraud, or the government's forfeiture of assets, should reduce the defendant's "loss" figure and thus his guideline range would quickly yield absurd results and deeply perverse incentives. Every recovery of stolen funds—recoveries the defendant had nothing to do with—would reduce the defendant's sentencing guidelines and thus his likely sentencing exposure. In economic crime cases, the government would be in the untenable situation of having to choose between promoting the pecuniary interests of victims and promoting the goals of sentencing as set forth in 18 U.S.C. 3553(a)—goals such as deterrence, protection of the public, and providing just punishment for the offense. The government urges the court to reject the defendant's novel argument that the "loss" amount in this case should be reduced by post-discovery recoveries, and should hold that the $590,000 defendant fraudulently obtained from the lender here is the appropriate measure of "loss" in this case.

        Respectfully Submitted,
SAIMA S. MOHSIN
ACTING UNITED STATES ATTORNEY

/s/ John K. Neal
JOHN K. NEAL
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9644

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2021, I caused a copy of the foregoing to be served on all counsel of record using the Court's ECF filing system.

        /s/ John K. Neal